and D. Cantrill-Appley by Douglas Fogel. I don't know how much time you had to read your briefs, I just want to briefly go over the facts before I start into the argument. Dean and Dina were married for 28 years by the time that she had filed her petition for dissolution in February of 2014. There were two adult children at that time. Dina received her degree in journalism in 1985 or 86. She worked in that profession for four weeks. Her highest earnings were in 1985 and they were roughly $6,000. When she and Dean married, Dean was a primary breadwinner. They moved several times to accommodate his career, which was by any measure successful. His gross earnings from 2009 to 2013 were in excess of $2.3 million. Dina stayed at home. She did work intermittently at part-time jobs. Her last recorded earnings during the marriage I believe were in 2002 and those were roughly $3,000. At the time that Dina filed, she was renting a place and that Dean was living in a temporary housing provided by his employer. Dean testified that the marriage was over for him in October of 2013. In May of 2014, Dean purchased a home in primarily by a marital IRA that Dean had liquidated without Dina's consent or court approval. Judge Vandewille ordered Dean and Dina to file a joint return for 2014 and assessed 10% of the remaining tax liability for Dina to pay. With respect to issue one, whether or not the trial court erred in ordering the standard of review is de novo. We are asking the court to reverse the trial court's order that they file a joint return. We recognize that under Section 503 of the Elderly Marriage and Dissolution of Marriage Act that a trial court has broad discretion in allocating marital assets and marital debts, but it is our position that the rights and benefits conferred upon individuals by the federal government are not subject to interference by a state court. Likewise, obligations imposed upon individuals by the federal court cannot be shielded by state courts, such as clauses to hold somebody harmless on a debt. The Supremacy Clause of the Constitution makes it... Let me ask you this. If he couldn't force that, if he did not have discretion to order her to file a joint return, would he have the discretion to assign her the $15,000 loss that was going to be incurred by virtue of filing separate returns and said, in other words, I'm going to tax that to you because of your incurring an extra $15,000 in tax liability, and if you don't want to file a joint return, that's all coming out of your pot. Can he do that? Well, I don't want to be picky, but she would have paid out of her own pocket for her own income, $4,000, and he would have then... But he could still reassign other assets to make up for it. I believe so. So could he do that? Yeah, I believe all of the cases say that, that the court has that discretion. So I think... And haven't they already filed their return? They have. Didn't it move? Well, Your Honor, I think... I know Mr. Scovel raised that in his brief, and I would submit to the court that this provision was entered at Mr. Scovel's client's request and over my client's objection. She had no recourse but to comply with the court's order. She knew... So how do we fix it? In other words, it's gone, done. Well, I think it falls under the parameters of the Jessica H. case, and that says there is a question of a public nature, there must be a reasonable need for an authoritative determination for future guidance of public officers, and there must be a likelihood of future recurrence of the question. The issues of tax filings come up repeatedly in dissolution cases, and I would submit that litigants, lawyers, and judges would benefit from some clear guidance on this issue. So I believe the court can take this issue up, even though they filed their taxes. I don't think... She knew she couldn't ask for an appellate review of an order she was defying. She knew that. So she had no choice but to comply. I guess I would take exception that here's an order entered over her objection, and then it gets booted out at the appellate level because she didn't comply. Okay. But let's suppose we agree with you. She still gets no relief from you. It's a done deal. So as far as it's not going to help her other than being the champion of some appellate court opinion that says trial courts can't do that, right? Well, that's possible. I mean, there's no relief that you shouldn't get monetary relief or anything like that from her, right? No, I think that's kind of under the... I mean, if the court allows the issue presented under the second piece of the appeal that it was an error for the court to assign the 10% penalty, she might obtain relief there. Can you address the de novo standard of review? What makes it de novo in your mind? I know you and Mr. Scoble agree, but we're not bound by that representation, and there seems to be a split in some of the cases on whether it's an abuse of discretion or de novo. Why do you think it's de novo? Because it's a legal question. It's whether or not... State the legal question for me. That I think whether or not federal law will preempt where there is a conflict between state law and federal law. The Congress, through the only authority to decide how to effectuate and collect taxes. And so that is a federal question, the issue of taxes. They collect them, they marshal them, and they spend them. And so I think that's the legal question of law, is whether or not this conflict between what the federal government is doing and what state courts are doing, that's the legal question. What's the conflict? Well, the conflict is whether or not a state court can make a party file a joint return when the IRS provides that that is an election that married couples can make. But this married couple was unable to make that election through a cooperative effort, just as sometimes we have to order the sale of businesses, we have to order the sales of homes, because couples can't agree and then we split the debt or the profit. How is this different than dividing up a debt? It's different because it's a right conferred by the IRS that says you have the election. In fact, there's a presumption that people are not going to file a joint return. So I think that's the difference. I don't know with respect to businesses or other marital debts if there's other federal legislation involved. So you are hoping that we will issue an opinion that says a trial court may not interfere with the couple's decision? Yes. And what was the couple's decision in this case, how to handle their tax? There wasn't a joint decision. There were two competing wishes. My client wished to file a separate return and he wished to file a joint return. And that happens all the time. Somebody wants to keep the house and it's not going to be feasible so the court has to order it to be sold. I don't really understand why this is a question of law simply because it involves a tax debt rather than a mortgage obligation or other. So that's what I'm struggling with, why this is a question of law. Can you run the figures for me? I know that there was a $15,000 benefit by filing jointly. How was your client harmed by not being allowed to file individually? Had she filed individually, her tax liability would have been $4,050. And what did she pay under the court's order? Roughly $14,000. It was a $10,000 difference. Correct. And do you think the allocation of assets in the long run, the end result was not equitable? Do you think she was shorted $10,000? Well, I think she was shorted way more than $10,000. But you haven't raised that issue about the allocation. Well, it was a part of the brief that had he left the IRA in tax, she would have gotten half of that at some point in the future. She would have gotten $130,000. Instead, she got from the residents that he purchased, she got $80,000 less the IRS debt. So she got $65,000 instead of $130,000. And didn't he try to finance that house conventionally before he liquidated the IRA? You know, there's nothing in the record about correspondence. I was a second attorney. At one point, was she asked to sign off on her homestead exemptions so that he could finance that normally? I'm honestly not sure about that. Maybe through her prior attorney she was, but I don't know about that. So you don't know whether she refused to sign a homestead waiver? I do not. Okay. May I get my water? Of course. Thank you. I would just like to briefly cover some of the decisions from the other jurisdictions. We have in Illinois the Zumo case, which really didn't address this particular issue. I mean, it was the issue of the joint tax filing, but there wasn't apparently any testimony on it. And the court just states that, generally speaking, it's to the party's joint material gain to file a joint return. So Illinois doesn't really have any case that's on point. There is a split in other jurisdictions. And I would point out to the court that of the cases relied upon by Dr. Scovel, even the Burston case from New Jersey, they did a thorough analysis. And I thought of the cases relied upon by him did the most complete analysis, although they don't sort out why this is different than, say, Social Security, military pensions, or the Federal Parental Kidnapping Act. And they do state that, as a result, we hope that the trial courts in New Jersey have discretionary authority to compel parties in divorce proceedings to file joint returns. Whether it is appropriate to compel the result will depend upon the facts presented in any given case. In general, we believe the trial courts should avoid compelling parties to execute joint tax returns because of the potential liabilities to which the parties would be exposed, and because there generally exists a means by which to compensate the parties for the adverse tax consequences of filing separately. So even the cases that say you can make somebody file a joint, say it should be a measure of last resort. And so... Well, doesn't that basically say that the trial court has the discretion to do it and don't abuse your discretion? Is that the standard? That was the standard in that particular case, yes. But if we look at the Black case out of Nebraska, that case found that the IRS is not bound by orders compelling people to sign a joint return. Of course. And that an order compelling the parties to file a joint return is a mandatory injunction, and that a mandatory injunction is an equitable form of an affirmative act to undo a wrongful act or injury, and it is considered an extreme or harsh remedy. Well, and because it was a mandatory injunction, it was immediately appealed, right? And there was no immediate appeal. Well, there was an appeal, and even though she's appealed it, the other side is raising the issue that it's, well, too bad you're too late. It's moved. I mean, she could have filed an immediate interlocutory appeal, filed a petition with the IRS to file taxes late and come up with an interlocutory appeal on that order for the filing of a return, right? Well, she did file for an extension, but there was no way to predict when anything would be heard or decided, so she did not believe that she had any other alternative than to file their taxes with her former husband. When was that order entered? July. Of? 2015. Okay. And when was the appeal filed? May I check, please? No, just if you know. Was it within a month? The motion to reconsider was, I believe, third in August, and then I believe the judgment was entered September, and the notice of appeal was filed October 15th of 2015. I would also ask the courts to consider the Lechwitz decision that the opportunity to benefit from filing a joint return in no way transforms the joint returns. A married couple, a married individual possesses complete discretion to file a separate return or, with the concerns of his or her spouse, a joint return. And so that is our request that you reverse the trial court on that issue. With respect to the second issue, Mr. Scoville and I disagree on the standard of review as to whether or not it was error for the court to assign Dean a 10 percent penalty on the liquidation of the IRA, and we rely on Thornley and Ann one for that, that abuse of discretion is the standard of review when talking about the division of marital property. I did review the cases cited by Mr. Scoville, that it's the standard of review is against the manifest way. I don't believe any of those cases had to do with the division of marital property, and so I would ask you to apply the abuse of discretion. The dissipation by Dean of liquidating that IRA, what that resulted in was substantial tax penalties. And what Mr. Scoville is saying, well, she got the majority of the assets and Dean got the majority of the debt. Well, when you look at the spreadsheet, the majority of the debt that was assigned to Dean, half of that was his IRS debt, so that's a debt of his own making, and it's our position he shouldn't be responsible for just 90 percent of it. On the dissipation, he should be responsible for 100 percent of that tax liability. He certainly has the ability to earn money, certainly more so than Dina, and I think it would be, I just don't think it's fair that she is required to pay an extra $10,000 in taxes on his dissipation. And so we would ask the court to reverse the trial court on that issue as well. Thank you. Mr. Scoville. If I could start off, I'd like to address Justice Smith's question about what was known or not known about the issue of signing the mortgage. In the record on page 157, Dean testified that he had asked his wife to sign that mortgage document releasing her claim of homestead in the property on more than one occasion. Judge Vandewille also addressed it in his opinion on page C233 and 235. He talked about the fact that the husband had signed the contract to purchase the property in Bettendorf, that he had sought to get the mortgage, that the mortgage lender required that the wife sign off on the homestead that she refused, and that I think his words were that left him contractually obligated but without the funds with which to go forward and close on the house. And since he valued his word and didn't want to bring about the potential of a lawsuit against the marital estate for not going forward with the purchase, he liquidated the 401K. Addressing Justice Wright, you asked why is this a question of law. I think we start off with a proposition. The question is, does a state trial court have the ability to order the parties to file in a certain status, a certain filing status? The Internal Revenue Code basically, and in my brief I laid out, there are five different filing statuses that the IRS recognizes. So the first question of law is, can a state order a couple going through a divorce to file under one of those particular statuses that they would qualify for? So that's what the legal question is. Does the court have the authority to order parties to take a particular filing status when filing a return? What is the court supposed to do when there is no agreement? Well, this gets to kind of the core of it. So if you find that, yes, the court has the authority, then clearly the court has discretion. The converse of that argument would be there could be no discretion to be exercised unless the court had the authority to exercise that. So I think you kind of answer the question when you say, yes, the court has the discretion to order the parties to file on a particular matter. So if I have discretion, I can only exercise discretion if I had the authority to exercise it in the beginning. So counsel talks about the supremacy clause, and as I pointed out in my brief, there are many areas in which the state court dabbles in the area of federal law, in the area of divorce. We allocate child dependency exemptions. We deal with tax credits. We deal with law security forwards. We deal with educational credits. It's kind of like as a married couple is going through life and everything is going great, they're on a bicycle. They're going the same direction. Divorce comes along and suddenly we add a third wheel to state, and that third wheel is the steering wheel of that tricycle, and it kind of directs what's going to happen to this married couple if they don't reach agreements. And that's exactly what happened here. There was no agreement, so the court felt that, well, I have to give some guidance and direction to this. I have the authority to do that because when you submit your life to the court through the divorce process, I now have authority to make decisions in areas where the two of you can't make agreements. And that's simply what the court did, is it said, I'm going to steer this bike in the direction that I think it needs to go. Counsel argues, well... Correct. The authority. Then... Correct. Correct. Then the court would say, well, we find that the trial court has no authority to order the parties to file their taxes in a particular manner. And then the converse line, the other line of cases, basically say, well, if the courts have taken that position that, no, we don't have the authority, then they go, well, okay, now you're going to have to engage in further litigation to decide that because one party doesn't want to file a joint tax return, did that cause harm to the marital estate? If so, what is the amount of the harm to the marital estate? How do we mitigate that harm to the marital estate? By reshuffling the deck and reallocating the assets or the liabilities between the parties. So Ms. Bailey kind of argues, well, her client is disadvantaged by having to file a joint tax return. What I think her argument fails to take into account and recognize is that her client benefited from all of the income that was earned in the 2014 calendar year. It wasn't just that she got maintenance payments from July of 14 through December of 14. There were the earnings that Mr. Cantrell had from January up until the temporary order was entered in July of 14. So she benefited from that income in that she used monies in the joint account to pay family debt. There were college expenses that were paid for the children. There was credit card debt that was serviced. So monies that were earned, marital funds were earned and spent for family purposes. So in the end, what the judge does is say, I'm going to visit 10% of the tax upon you. And is that unfair? Probably not. If we just look at an analysis of how much maintenance did she receive for half of the year in 2014, she received approximately a third of the gross income. So if she received a third of the gross income that Mr. Cantrell made that year, why would it be inequitable to say that she should pay 10% of the total tax bill? And I think Judge Vandewille, he kind of hit the nail on the head in the motion to reconsider. He described what he did. He said this was a very complex case with a lot of pieces to the puzzle. Taxes were but one small piece of this puzzle. And I did what I did simply in view of trying to maximize the benefit to the marital estate. If Ms. Bailey's argument was correct, we would say, all right, husband, you should file separately and incur an additional $15,000 worth of debt. And then we would say to the wife, well, you're going to file separate, and you're going to have to report income tax on the maintenance that you received. So you're going to pay another $4,000. So that's a $19,000 waste of assets out of the marital estate, whereas by filing jointly, they were able to save that $14,000. So all the judge was doing was saying, it makes no sense to me to say that you should file in a manner that takes away from the marital estate, leave as much money in the marital estate as possible for division between the two of you. On the issue of which one of the lines of cases you go with, that's what you're going to have to struggle with is do you have the authority? And I think the answer is clearly yes, because, as I say, when parties file for divorce, I think you give up some of your individual rights, and you've said I'm going to let the court have to make these decisions if I can't make those decisions. And all the time we see the state courts deal with federal issues and the federal tax code. So I don't think there's any supremacy clause that's going to preempt it. Can you give me a sense of the history of this couple during the course of the marriage? Did they file individually or jointly? Now, the record reflected, I believe, that they had filed joint returns up until this point in time and that the wife's concern was she didn't want to file a joint return because he incurred additional tax liability by liquidating the IRA. And the court basically said, I'm going to visit the 10 percent penalty for liquidation prior to age 59 and a half upon the husband. He has to pay 100 percent of that 10 percent penalty. So it was only the actual tax that the court was saying was going to be paid 10 percent. But in the scheme of things, when you look at the judge's final analysis, he basically ended up giving, of the net assets, 73.7 percent to the wife and giving 26.3 to the husband. So I think what he said is mostly reconsidered. Taxes were just one piece of the puzzle. He meant what he said. I gave the wife the lion's share of the net assets, and I visited upon her a very small part of the tax liability. That's one piece of the overall picture. Any other questions? Thank you. Thank you, Mr. Chobot. Ms. Bailey, any rebuttal? To address your question with respect to the party's habit of filing taxes during the marriage, it is my understanding also that they filed joint returns. She had no income, essentially, throughout the marriage. But I don't believe that the right bestowed upon an individual by the IRS under Code 6013 expires because you didn't use it within a certain amount of time or that it goes away. Mr. Scovel blames this entire tax penalty issue on Dina because she wouldn't sign whatever paperwork. I would submit that the time for Dean to secure her approval was before he offered a purchase. He should have cleared that with her prior to even making the offer. We don't know why he couldn't rent the same way she was until this was completed. I'm a little bit bewildered by the assertion that Dina had the benefit of Dean's income in the first six months of 2014. The evidence is clear that by May of 2014, Dean was living with his girlfriend in the house in Bettendorf. So I don't know how Dina had access to his income at that time. They were living separate and apart. And if she had unfettered access to his income, I don't think it would have been necessary for the court to enter an order for temporary maintenance. That's all I have. Thank you. Thank you, Ms. Barrett. Thank you both for your argument today. We will take this matter under advisement. The facts are as they're written in our decision. We're going to take a short break now. We'll take a short recess for now.